

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 26, 2022

**VIA ECF and Email**
The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

>      **Re:**    ***United States v. Quashon Burton*, 21 Cr. 791 (LAK)**

Dear Judge Kaplan:

The Government respectfully submits this letter motion in support of detention on the ground that the defendant Quashon Burton ("Burton" or "defendant"), poses an extreme risk of flight, and there is no condition or combination of conditions that will reasonably assure the appearance of the defendant as required. *See* 18 U.S.C. § 3142(e)(1).

On October 20, 2022 — after nearly a year as a fugitive — Burton was arrested by the Orange County Sheriff's Office in Orlando, Florida. Shortly thereafter he was transferred to federal custody pursuant to a detainer lodged in connection with the instant case. On October 27, 2022, Magistrate Judge David A. Baker presided over a detention hearing in the Middle District of Florida and, although he noted that the issue of detention was a "close call," ordered the defendant released on the following conditions:[1]

- Pretrial supervision in the Southern District of New York;
- "GPS Monitoring"[2];
- Travel restricted to SDNY and EDNY;
- All other standard conditions;

The U.S. Attorney's Office for the Southern District of New York ("SDNY") immediately notified the Middle District of Florida of its intent to appeal the magistrate judge's bail determination and asked that the defendant's release from custody be stayed pending appeal.

---

[1] No order or disposition sheet has yet been published or made available to SDNY.

[2] It is unclear based on the information provided by the MDFl if the defendant has been ordered to be placed on home detention or home incarceration or where he should reside while on GPS monitoring.

Magistrate Judge Baker stayed the defendant's release until noon on October 28, 2022 in order to allow SDNY to initiate an appeal and seek a further stay from this Court.

## I.    Background

### i.    The Charged Offenses

On November 29, 2021, Burton was charged in a three-count complaint (the "Complaint") with (i) conspiracy to steal government funds; (ii) theft of government funds; and (iii) aggravated identity theft in connection with his theft of nearly $150,000 through the submission of fraudulent COVID relief loan applications.  *See* Ex. A (Complaint).  On December 20, 2021, Burton was charged in a three-count indictment that mirrored the charges in the Complaint.  In order to carry out his scheme, Burton fraudulently obtained and used names, dates of birth, and social security numbers of at least four people (the "Victims").  He also maintained an email account in a false name and on at least one occasion during the charged conspiracy, was arrested in possession of a fake identification card bearing the name of one of the Victims.

### ii.    The Arrest

In connection with the Complaint, on November 29, 2021, SDNY Magistrate Judge Debra Freeman authorized an arrest warrant for Burton.  On or about December 2, 2022, law enforcement agents from the United States Postal Inspection Service ("USPIS") attempted to arrest Burton at his last known address in Brooklyn, New York.  Burton was not home.  USPIS agents visited the home on two other occasions and were informed by Burton's mother that Burton would not be self-surrendering.  At the time agents attempted to arrest Burton, he was serving a term of Probation in connection with a New York State Supreme Court Criminal Possession of Stolen Property conviction.  USPIS has been informed that Burton has not been in compliance with his term of Probation.

After nearly a year as a fugitive, Burton was arrested in Orlando, Florida on October 20, 2022.  The circumstances of his arrest are directly relevant to the Court's evaluation of the risk of flight.  While off-duty and on vacation at Disney World, case agent Postal Inspector Jeff Andre recognized Burton, who was also vacationing at the Disney World park Animal Kingdom.  Upon recognizing Burton, PI Andre alerted Disney World security who in turn alerted local law enforcement.  Local law enforcement approached Burton after he exited the park and arrested him pursuant to the Arrest Warrant. At the time of his arrest, Burton resisted law enforcement and gave a false name.  He was charged with resisting arrest by local law enforcement and placed in local custody before being transferred to federal custody on or about October 20, 2022.  *See* Ex. B (Orange County Sheriff's Office Arrest Report.)  Law enforcement later learned that Burton had been using a false identity while at Disney World.  On October 27, 2022, Magistrate Judge David A. Baker presided over a detention hearing in the Middle District of Florida and ordered the defendant released on conditions.  During the bail hearing, defense counsel did not offer any explanation for Burton's use of false identities during the offense or while in Disney World.

## II.    <u>Legal Standard</u>

Pursuant to 18 U.S.C. § 3145(a), "if a person is ordered released by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the Government may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the conditions of release." The standard of review is *de novo*. *See United States v. Minnici*, 128 F. App's 827, 828 n.1 (2d Cir. 2005) (summary order) (citing *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985)). When conducting this review, the district court may rely on the record of the proceedings before the magistrate judge and may also accept additional evidence. *United States v. Colombo*, 777 F.2d 96, 98 (2d Cir. 1985).

Under the Bail Reform Act, 18 U.S.C. §§ 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. 18 U.S.C. § 3142(e). A finding of risk of flight must be supported by a preponderance of the evidence. *See, e.g.*, *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Jackson*, 823 F.2d 4, 5 (2d Cir. 1987); *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985). A finding of dangerousness must be supported by clear and convincing evidence. *See, e.g.*, *United States v. Ferranti*, 66 F.3d 540, 542 (2d Cir.1995); *Patriarca*, 948 F.2d at 792; *Chimurenga*, 760 F.2d at 405.

The Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the defendant, including the person's "character . . . [and] financial resources"; and (4) the seriousness of the danger posed by the defendant's release. *See* 18 U.S.C. § 3142(g). Evidentiary rules do not apply at detention hearings, and the Government is entitled to present evidence by way of proffer, among other means. *See* 18 U.S.C. § 3142(f)(2); *see also United States v. LaFontaine*, 210 F.3d 125, 130-31 (2d Cir. 2000) (Government entitled to proceed by proffer in detention hearings). Where a judicial officer concludes after a hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1).

## III.    <u>Discussion</u>

### A. All Factors Counsel Strongly in Favor of Detention

For the reasons set forth below, Burton presents an extreme risk of flight. Every one of the relevant factors to be considered as to flight risk—the nature and circumstances of the offense, the strength of the evidence, and the history and characteristics of the defendant—counsel strongly in favor of detention.

i.     **The Nature and Circumstances of the Offense and the Strength of the Evidence**

As outlined in the Complaint, the defendant engaged in a months long scheme to try to obtain the proceeds of two fraudulent COVID relief loans ("Loan-1" and "Loan-2," and collectively, the "Loans").

The evidence in the case is strong. During the investigation, law enforcement searched, pursuant to a search warrant, an email account that was used to submit Loan-1. The email account was in the name of one of the Victims. The search revealed that Burton received at least one personal email in his own name as well as several emails that listed Burton's home address. Further, a review of cellsite data for Burton's cellphone revealed that Burton was in the vicinity of the IP address location associated with at least one of the Loans at the time that it was submitted, as well as in the vicinity of the Bronx ATM on or about the day that loan funds were withdrawn, and in the vicinity of the New York Postal facility on or about the date that postal money orders were purchased using a bank card in the name of one of the Victims.

In addition to electronic evidence, the Government has also obtained arrest records that show that the defendant was arrested in possession of a bank card in the name of a Victim (but bearing his own photograph) while at a casino in Monroe County, Pennsylvania. Surveillance video obtained from the Casino clearly confirms Burton's identity.

ii.     **The History and Characteristics of the Defendant**

The history and characteristics of the defendant also strongly support detention. The defendant, who is 32 years old, faces a serious sentence that includes a two-year mandatory minimum. The defendant has previously been convicted of criminal possession of stolen property in violation of New York Penal Law Section 165.50 in New York Supreme Court. During the pendency of that case, two bench warrants were issued.[3] While serving the five-year term of probation that was imposed in that case, Burton engaged in the offense charged here. In addition, Burton was charged with his possession of a false identity in Monroe County, Pennsylvania, but that case was dismissed when the conduct was subsumed by the instant case.

Perhaps the most concerning factor here is the defendant's persistent use of false identities and his demonstrated ability to evade law enforcement. During the scheme charged in this case, the defendant used fraudulent email accounts, fake identification documents, bank accounts and bank cards in the names of other individuals, and stolen personal identification information (PII) in a manner that created a complex web of identities that made his crimes difficult to investigate. He has clearly demonstrated an ability to mask his true identity to evade law enforcement. So too has he demonstrated a willingness to lie about this identity to avoid arrest. At the time he was arrested in Disney World, he was present in the park under a false name. Even after fingerprints confirmed his identity, he persisted in telling law enforcement that he was not Quashon Burton.

---

[3] The bench warrants were issued on November 8, 2017 and January 12, 2021.

### iii.    The Proposed Bail Conditions are Wholly Inadequate

The conditions of release proposed by Magistrate Judge Baker are wholly inadequate to mitigate the risk of flight.  There is no reason to believe that the defendant will abide by conditions that require his return to the Southern District of New York of his own accord, and his attendance at future proceedings in this case, after he has been at large using false identities for over a year. It is equally unlikely that an individual who committed crimes and evaded law enforcement *while serving a term of probation* will abide by the mandates of the Court on release.  It is also unclear where Burton will reside once in the Southern District of New York and if that residence will be suitable for electronic monitoring.

## IV.    <u>Conclusion</u>

As set forth above, the defendant is an extreme risk of flight.  The Government respectfully submits that there are no conditions of bail that would assure the defendant's presence in court proceedings in this case.  Accordingly, any application for bail should be denied.  In the alternative, the defendant's release should be stayed pending his appearance in SDNY.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: _____
Ashley C. Nicolas
Assistant United States Attorney
(212) 637-2467

# EXHIBIT A

Approved: _Ashley C. Nicolas_____
         ASHLEY C. NICOLAS
         Assistant United States Attorney

Before:  THE HONORABLE DEBRA FREEMAN
        United States Magistrate Judge
        Southern District of New York

# 21 MAG 11398

- - - - - - - - - - - - - - - - - - X

                       :   <u>SEALED COMPLAINT</u>

UNITED STATES OF AMERICA     :

                       :   Violations of
     - v. -              :   18 U.S.C. §§ 371, 641,
                       :   1028A(a)(1), and 2.

QUASHON BURTON,            :

                       :   COUNTY OF OFFENSE:
            Defendant.    :   BRONX AND NEW YORK

- - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

      JEFF ANDRE, being duly sworn, deposes and says that he is a Postal Inspector with the United States Postal Inspection Service (USPIS), and charges as follows:

<u>COUNT ONE</u>
(Conspiracy to Steal Government Funds)

      1.    From at least in or about June 2020 up to and including in or about May 2021, in the Southern District of New York and elsewhere, QUASHON BURTON, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other, to commit an offense again the United States, to wit, theft of government funds, in violation of Title 18, United States Code, Section 641.

      2.    It was part and object of the conspiracy that QUASHON BURTON, the defendant, and others known and unknown did embezzle, steal, purloin, and knowingly convert to their use and the use of others, vouchers, money, and things of value of the United States and a department and agency thereof, to wit, the Payment Protection Program ("PPP") of the Small Business Administration ("SBA"), which exceeded the sum of $1,000, and did receive, conceal, and retain the same with intent to convert it to his use and gain, knowing it to have been embezzled,

stolen, purloined and converted, in violation of Title 18, United States Code, Section 641.

## Overt Acts

3.    In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.    On or about July 26, 2020, QUASHON BURTON, the defendant, accessed a particular bank account ("Bank Account-1") at an ATM in the Bronx, New York.

b.    On or about July 27, 2020, BURTON attempted to purchase six postal money orders at a postal facility in New York, using two Chime bank cards ("Victim Bank Card-1" and "Victim Bank Card-2") in the names of two victims of identity theft, both of which cards received proceeds of fraudulent SBA PPP loans.

(Title 18, United States Code, Section 371 and 2.)

## COUNT TWO
(Theft of Government Funds)

4.    In or about July 2020,  in the Southern District of New York and elsewhere, QUASHON BURTON, the defendant, did embezzle, steal, purloin, and knowingly convert to his use and the use of others, vouchers, money, and things of value of the United States and a department and agency thereof, to wit, the Payment Protection Program ("PPP") of the Small Business Administration ("SBA"), which exceeded the sum of $1,000, and did receive, conceal, and retain the same with intent to convert it to his use and gain, knowing it to have been embezzled, stolen, purloined and converted.

(Title 18, United States Code, Sections 641 and 2.)

## COUNT THREE
(Aggravated Identity Theft)

5.    From at least in or about July 2020, up to and including in or about August 2020, in the Southern District of New York and elsewhere, QUASHON BURTON, the defendant, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, BURTON used the names and

2

dates of birth of other persons to steal government funds through his fraudulent application for and receipt of SBA PPP loan benefits, as charged in Counts One and Two of this Complaint.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

6.    I am a Postal Inspector with USPIS, and I have been personally involved in the investigation of this matter.  This affidavit is based on, among other things, my conversations with law enforcement officers and others, my examination of reports and records prepared by law enforcement officers and others, and my involvement in this investigation.  Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation.  Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

7.    Based on my participation in this investigation, I have learned that QUASHON BURTON, the defendant, has engaged in a scheme to obtain approximately $149,800 in SBA PPP loan proceeds by fraudulently filing for benefits using the names, dates of birth, and social security numbers of at least four other people.

COVID-19 SBA PPP Loans

8.    The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") provided for the authorization of billions of dollars in forgivable loans to small businesses for payroll, mortgagee interest, rent/lease, and utilities through PPP.  In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application.  The application required applicant businesses to state, among other things, their average monthly payroll and number of employees.  These figures were then used to calculate the amount of money each business was entitled to under the PPP.

9.    The CARES Act also gave states the option to extend unemployment compensation to workers who are traditionally ineligible for UI benefits and provided additional administrative funding to allow states to respond to the needs

of workers during the pandemic.  The UI programs are
administered through state Departments of State and, in most
instances, claimants are permitted to file for benefits through
an online portal.

<u>The Bank Cards</u>

10.  Based on my review of bank records obtained from a
national financial institution ("Bank-1"), I have learned, among
other things, the following:

a.  Victim-1 Bank Card was registered to an
individual ("Victim-1") at a particular address in East Orange,
New Jersey (the "East Orange Address") and with a particular
date of birth in 1981 ("Victim-1 Birth Date").

b.  Victim-2 Bank Card was registered to an
individual ("Victim-2") with a particular date of birth in 1969
("Victim-2 Birth Date").  The Victim-2 Bank Card was registered
to the East Orange Address and with a particular telephone
number ending in 4515 (the "4515 Number").

<u>Bank Account-1</u>

11.  Based on my review of bank records obtained from a
national financial institution ("Bank-2"), I have learned, among
other things, the following:

a.  On or about June 30, 2020, a bank account ("Bank
Account-1") was opened online through Bank-2 in the name of a
particular individual ("Victim-3").

b.  Bank Account-1 is associated with the East Orange
Address and the phone number associated with Bank Account-1 is a
particular phone number ending in 3196 (the "Burton Number").

<u>The SBA PPP Loan Applications</u>

12.  Based on my review of bank records obtained from
Banks-1 and -2, as well as records obtained from SBA, the Texas
Secretary of State, and the Bexar County clerk in Bexar, Texas,
I have learned, among other things, the following:

a.  On or about July 17, 2020, an SBA PPP Loan
application ("Loan Application-1") was submitted in the name of
an individual ("Victim-4") with the same name as Victim-1 but
with a birthdate different than the Victim-1 Birth Date. Loan
Application-1 listed a particular email address ("Email Address-

1") and purported to have been submitted on behalf of a daycare facility based in San Antonio, Texas (the "Daycare Facility"). Loan Application-1 also listed the 4515 Number, that is, the phone number registered to Victim Bank Card-2.

b.    On or about July 17, 2020, an SBA PPP Loan application ("Loan Application-2") was submitted in the name of an individual ("Victim-5") with the same name as Victim-2 but a different birth date than the Victim-2 Birth Date. Loan Application-2 listed a particular phone number ending in 3749 (the "3749 Number") and purported to have been submitted on behalf of a flooring company in San Antonio, Texas (the "Flooring Company"). Loan Application-2 was submitted from a particular IP address ending in .241.2 (the ".241.2 IP Address").

c.    There are no businesses registered in the state of Texas in the names of Victim-1, -2, -4, or -5.

<u>The IP Address</u>

13.    Based on my review of records provided by a particular internet service provider as well as a particular hotel on 7th Avenue in Miami, Florida (the "Miami Hotel"), I have learned, among other things, the following:

a.    The .241.2 IP Address is registered to the Miami Hotel.

b.    The .241.2 IP Address accessed the Victim-1 Bank Card account at least seven times in July and August 2020, including on or about July 17, 2020 (the date that Loan Application-1 was submitted).

c.    The .241.2 IP Address accessed the Victim-2 Bank Card account at least three times in July and August 2020, including on or about July 17, 2020 (the date that Loan Application-2 was submitted).

d.    From on or about August 25, 2020 through on or about August 27, 2020, and again from on or about August 28, 2020 through on or about August 31, 2020, QUASHON BURTON, the defendant, was a registered guest at the Miami Hotel.

## The PPP Loan Proceeds

14.    Based on my review of records from the SBA, the Victim-1 and -2 Bank Cards, Bank Account-2, and the U.S. Postal Service, I know, among other things, the following:

      a.    On or about July 20, 2020, the SBA deposited $79,900 onto the Victim-1 Bank Card pursuant to Loan Application-1.

      b.    On or about July 20, 2020, the SBA deposited $69,900 onto the Victim-2 Bank Card pursuant to Loan Applcation-2.

      c.    On or about July 26, 2020, ATM surveillance video captured an image (the "ATM Image") of an individual accessing Bank Account-1. I have compared the ATM Image with arrest photographs of QUASHON BURTON, the defendant, and I have concluded that they depict the same individual.

      d.    On or about July 27, 2020, a total $10,000 was transferred from the Victim-1 and -2 Bank Cards[1] to Bank Account-1.

      e.    On or about July 27, 2020, BURTON attempted to use the Victim-1 and -2 Bank Cards to purchase six U.S. postal money orders totaling $6,004.50 from a postal facility in New York, New York. At the time of the attempted purchase, Postal Inspectors confronted BURTON who identified himself as "Quashon Burton." Postal Inspectors confiscated the Victim-2 Bank Card.

## The Casino Arrest

15.    Based on my review of records and surveillance images obtained from a particular casino in Mt. Pocono, Pennsylvania (the "Mt. Pocono Casino") and Pennsylvania State Police, I know, among other things, the following:

      a.    On or about August 4, 2020, QUASHON BURTON, the defendant, was arrested at the Mt. Pocono Casino. At the time of his arrest, BURTON identified himself as Victim-1. BURTON also stated that his phone number was the Burton Number,[2] that is, the phone number associated with Bank Account-1.

---

[1] $5,000 was transferred from each card.

[2] According to law enforcement databases, the Burton Number is associated with QUASHON BURTON, the defendant.

b.    At the time of his arrest, BURTON presented a
fake New Jersey driver's license bearing his picture and the
name of Victims-1 and 4.  He was also in possession of the
Victim-1 Bank Card.

<u>The Phone and Email Records</u>

16.  Based on my review of phone records provided by the
provider for the Burton Number I know, among other things, that
on or about July 17, 2020 (the day Loan Applications-1 and -2
were submitted), the Burton Number — the phone number belonging
to QUASHON BURTON, the defendant — was in contact with the phone
numbers associated with both Loan Application-1 (the 4515
Number) and Loan Application-2 (the 3749 Number).

17.  On or about June 4, 2021, the Honorable Sarah L. Cave,
United States Magistrate Judge, Southern District of New York,
authorized a warrant and order for historical location
information for the Burton Number (the "Cellsite Warrant").
Based on my review of the returns from the Cellsite Warrant, I
know, among other things:

a.    On or about July 17, 2020 — the day Loan
Applications-1 and -2 were submitted — the user of the Burton
Number was in Miami, Florida, in the vicinity of the Miami Hotel.

b.    On or about July 26, 2020 — the day BURTON
accessed Bank Account-1 was accessed in the Bronx, New York —
the Burton Number was in the Bronx, New York in the vicinity of
the ATM.

c.    On or about July 27, 2020 — the day BURTON
purchased the money orders — the Burton Number was in New York,
New York in the vicinity of the postal facility.

18.  Based on my review of the Cellsite Warrant returns as
described above, I believe that QUASHON BURTON, the defendant,
is the owner of the Burton Number and that BURTON was (i) in the
vicinity of the Miami Hotel on or about July 17, 2020; (ii)
accessed Bank Account-1 on or about July 26, 2020; and (iii)
purchased postal money orders in New York, New York, on or about
July 27, 2020.

19. Based on my review of records provided by the provider for Email Address-1, I know, among other things, the following:

      a.    Email Address-1 — which appears on Loan Application-1 — is subscribed to a user whose name is a slight misspelling of Victims-1 and -4's name. Based on my training and experience, I know that slight misspellings are common in email accounts established to appear legitimate while perpetrating fraud.

      b.    Email Address-1 is registered to the 4515 Number.

### Additional Applications for Benefits

20. On or about May 17, 2021, the Honorable Robert W. Lehrburger, United States Magistrate Judge, Southern District of New York, signed an order pursuant to 18 U.S.C. § 2703(d) for non-content information including header information for the Subject Account (the "2703(d) Order"). Based on my review of the information provided pursuant to the 2703(d) Order, I know, among other things, that between July 2020 and May 2021, the Email Address-1 received emails from:

    a. At least four Departments of State including the offices for New York, Alaska, Arizona, and Indiana.

    b. At least eight financial institutions.

    c. At least one cryptocurrency exchange.

21. Based on my review of records obtained from Bank-2, I know that, on or about August 20, 2020, Bank Account-1 received a $10,506 deposit from the Arizona State Department pursuant to an unemployment insurance claim that was submitted from an IP address that traces back to another individual ("CC-1").[3]

22. Based on my conversations with law enforcement officers in Murphy, Texas, I know that on or about August 28, 2020, CC-1 was arrested in possession of, among other things, debit cards in the names of individuals other than CC-1 and bulk cash.

---

[3] On or about August 24, 2020, Bank-2 closed Bank Account-1 on suspicion of fraud.

<u>The Victims</u>

23.   Based on my review of Department of Motor Vehicle ("DMV") records, I know, among other things, the following:

        a.   Victim-1 was born on a particular date in 1981 and resides in New York.

        b.   Victim-2 was born on a particular date in 1969 and resides in California.

        c.   Victim-3 was born on a particular date in 1981 and resides in California.

        d.   Victim-4 has the same first and last names as Victim-1, was born on a particular date in 1969, and resides in Texas.

        e.   Victim-5 has the same first and last names as Victim-2, was born on a particular date in 1951, and resides in Texas.


        WHEREFORE, I respectfully request that a warrant be issued for the arrest of QUASHON BURTON, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.



                        s/Jeff Andre, by the Court, with permission
                        _____
                        JEFF ANDRE
                        Postal Inspector
                        United States Postal Inspection Service



Sworn to me through the transmission of
this Complaint by reliable electronic
means, this 29th day of November, 2021.

                                        (telephone)

_____
THE HONORABLE DEBRA FREEMAN
United States Magistrate Judge
Southern District of New York

EXHIBIT B

**[REDACTED]**